UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

DIEGO ALCANTARA,

               Plaintiff,

       -against-

THE CITY OF NEW YORK, OFFICE OF THE SPECIAL
NARCOTICS PROSECUTOR FOR THE CITY OF NEW YORK
SENIOR INVESTIGATOR ROGER CASUSO, Individually
and as Senior Investigator for the Office
of the Special Narcotics Prosecutor for the
City of New York, UNITED STATES DEPARTMENT OF
JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL
AGENT MARK CRANE, UNITED STATES DEPARTMENT OF
JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL
AGENT JOHN OLDANO, UNITED STATES DEPARTMENT OF
JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL
AGENT F/N/U DELLAMARA, UNITED STATES DEPARTMENT
OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION
SPECIAL AGENT JOHN DOE, (whose identity is
currently unknown but who is known to be a
special agent of the USDOJ DEA, and UNITED
STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT
ADMINISTRATION Group Supervisor NICHOLAS CARUSO,
all individual USDOJ DEA Defendants are being
sued in their individual capacities,

               Defendants.
------------------------------------------------x

    COMPLAINT AND
    DEMAND FOR
    JURY TRIAL

**<u>INTRODUCTION</u>**

    1.   This is an action for compensatory damages, punitive damages and attorney s fees for the wrongful acts of defendants THE CITY OF NEW YORK, OFFICE OF THE SPECIAL NARCOTICS PROSECUTOR FOR THE CITY OF NEW YORK SENIOR INVESTIGATOR ROGER CARUSO, acting under color of state law and pursuant to their authority, UNITED STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION

SPECIAL AGENTS MARK CRANE, JOHN OLDANO, F/N/U DELLAMARA and JOHN DOE, acting as federal agents and pursuant to their authority, UNITED STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION Group Supervisor NICHOLAS CARUSO, acting as a federal agent and pursuant to his authority in violation of plaintiff s rights under the Constitution and laws of the United States.

2.    Plaintiff alleges that beginning on or about April 20, 2004, when a  no arrest  indictment S1 04 Cr. 345 (HB) was filed charging among others, plaintiff DIEGO ALCANTARA, with conspiracy to commit money laundering and money laundering in violation of Title 18, United States Code, Section 1956, and continuing with the arrest of plaintiff DIEGO ALCANTARA on or about May 3, 2004, and continuing with the filing of a superseding indictment S2 04 Cr. 345 (HB), on or about May 3, 2004, and continuing throughout the time that plaintiff was incarcerated at the Metropolitan Correctional Center until the plaintiff DIEGO ALCANTARA was released on bail on or about July 14, 2004, and continuing until the plaintiff s criminal case with respect to indictment S2 04 Cr. 345 (HB) and all underlying indictments were dismissed pursuant to an order of nolle prosequi signed by Assistant United States Attorney Boyd M. Johnson III, and United States Attorney, Southern District of New York, David N. Kelley, and the Honorable Harold Baer, Jr., United States District Judge, on January 10, 2005, defendants committed wrongful and illegal acts against plaintiff, including violating plaintiff s Constitutional and civil rights

and conspiring to violate plaintiff s Constitutional and civil rights by wrongfully imprisoning and maliciously prosecuting him for acts of which the plaintiff was wholly innocent, without any probable or just cause.

### JURISDICTION

3.    This action is brought under 42 U.S.C. Sections 1981, 1983, 1985 and 1988, in conjunction with the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 29 L.Ed.2d 619, 91 S.Ct. 1999 (1971).

4.    Jurisdiction is invoked herein pursuant to the aforementioned statutory and Constitutional provisions, federal case law and pursuant to 28 U.S.C. Section 1331 and 1343, this being an action seeking redress for the violation of the plaintiff s Constitutional and civil rights.

### VENUE

5.    Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. Section 1391(b) in that the incident arose in the Southern District of New York.

### JURY DEMAND

6.    Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed. R. Civ. P. 38(b).

### PARTIES

7.    At all times relevant hereto, plaintiff DIEGO ALCANTARA, was and is a citizen of the United States and resident

of Queens County, in the City and State of New York.

8.   At all times relevant hereto, defendant, the CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.   Defendant, the CITY OF NEW YORK, maintains the Office of the Special Narcotics Prosecutor for New York City, a duly organized prosecutorial agency, authorized to perform all functions of a prosecutorial agency as per the applicable sections of the New York State Judiciary Laws, with jurisdiction to investigate and prosecute major drug trafficking crimes in the five counties of New York City, which employs special investigators for that office, including defendant SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, acting under the direction and supervision of the aforementioned municipal corporation, the CITY OF NEW YORK.

10.  At all times relevant hereto, the individually named defendant, SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, was a duly sworn senior narcotics investigator, employed by the Office of the Special Narcotics Prosecutor for New York City and acting under the supervision of the Office of the Special Narcotics Prosecutor for New York City and according to his official duties.  He is being sued in both his individual and official capacity.

11.  At all times relevant hereto, the defendants THE CITY OF NEW YORK and SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, either personally or through their employees, were acting

under color of state law.

12.  At all times relevant hereto and in all their actions described herein, the defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the Office of the Special Narcotics Prosecutor for the City of New York, New York City, and the State of New York, pursuant to their authority as employees, servants and agents of the Office of the Special Narcotics Prosecutor for the City of New York, within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and senior investigators.

13.  At all times relevant hereto, the individually named defendants, UNITED STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS MARK CRANE, JOHN OLDANO, F/N/U DELLAMARA, JOHN DOE and Group Supervisor NICHOLAS CARUSO were duly sworn special agents, employed by The United States Department of Justice, Drug Enforcement Agency, and acting under the supervision of The United States Department of Justice, Drug Enforcement Agency and according to his official duties.  Each individually named special agent defendant is being sued in his individual capacity.


**FACTUAL BACKGROUND**

14.  On or about May 3, 2004, the plaintiff was handcuffed and arrested in his home located in Corona, Queens County at about 6:00 a.m. while his wife and children were at home by, upon

information and belief, agents from the Drug Enforcement Administration, acting pursuant to an arrest warrant, based upon information provided by SPECIAL NARCOTICS SENIOR INVESTIGATOR (hereinafter also  SN SI ) ROGER CASUSO, acting in an undercover capacity, and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS (hereinafter also  DEA SA ) MARK CRANE, JOHN OLDANO, F/N/U DELLAMARA, JOHN DOE, and NICHOLAS CARUSO, all of whom were jointly involved in a long-term money laundering investigation.

15.   The arresting agents searched the plaintiff s home but failed to find any evidence of any criminal activity or enterprise.

16.   The arresting agents took the plaintiff by car to a federal field office located at Eleventh Avenue between 16th and 17th Streets in Manhattan.

17.   During the ride, the plaintiff repeatedly told the arresting agents that they were making a mistake.

18.   At the field office, upon information and belief, a federal agent from the Drug Enforcement Administration, who spoke only some Spanish, interrogated the plaintiff, who speaks some English, but whose primary language is Spanish.

19.   The interrogating agent questioned the plaintiff in a very intimidating manner and told the plaintiff that he was caught in a really big case and that he could be locked up for twenty (20) years.

20.   The interrogating agent also said they had videos of the

plaintiff receiving money and giving it to the undercover agent.

21.    Upon hearing about the video recordings, the plaintiff stated words to the effect that that was good, because then he would be able to prove that he was not the person in the video.

22.    After a while, a female began translating, but she was not actually proficient in the Spanish language.

23.    The interrogating agent advised the plaintiff that it would be better for him if he told the agent everything he knew. The agent asked DIEGO ALCANTARA to provide him with names of others involved and repeated that he was in big trouble and he had to talk to them.

24.    The plaintiff, DIEGO ALCANTARA, who was a fifty (50) year old hard-working family man at the time, told the agents that they were making a mistake and that he did not have any information to provide to them because he did not know anything about what they were charging him with.

25.    The plaintiff saw cameras in the room where he was questioned, but did not know whether he was being videotaped.

26.    After remaining at the field office for approximately one hour, the plaintiff was transported to the United States Courthouse for the Southern District of New York located at 500 Pearl Street, New York, New York 10013.

27.    The plaintiff met briefly with an attorney assigned by the Criminal Justice Agency and was arraigned on charges of conspiring to engage in money laundering in violation of Section 1956(a)(1)(B)(i) of Title 18, United States Code and money

laundering of narcotics proceeds affecting interstate and foreign commerce in violation of Section 1956(a)(1)(B)(i) and 2 of Title 18, United States Code.

28.   The overt act that the plaintiff was alleged to have committed in the conspiracy and the basis for the money laundering charge occurred on October 17, 2001, when the plaintiff was charged with having possessed $135,616.00 in illegal narcotics proceeds, that he transferred to an undercover law enforcement officer, defendant SN SI ROGER CASUSO, on the southwest corner of 125th Street and Broadway, in Manhattan, New York.

29.   On October 17, 2001, UNITED STATES DEPARTMENT of JUSTICE DEA SA MARK CRANE, JOHN OLDANO, DELLAMARA and JOHN DOE, were among the officers and agents that were part of the field team backing up undercover SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, all of whom were acting under the supervision of UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION Group Supervisor NICHOLAS CARUSO.

30.   The laundered money pickup that occurred on October 17, 2001, which was the basis for the arrest, imprisonment and prosecution of the plaintiff, was visually recorded with surveillance cameras and video equipment with zoom capabilities by the field team that consisted of agents from the New York Division Office Group D-31 of the Drug Enforcement Administration and investigators and officers from the Manhattan Office of the Special Narcotics Prosecutor.

31.   The laundered money pickup that occurred on October 17,

2001, which was the basis for the arrest, incarceration and prosecution of the plaintiff, was recorded by undercover SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, and the original Kel audio-cassette tape was preserved for evidence.

32.    SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DEA SA MARK CRANE, under the supervision of UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION Group Supervisor NICHOLAS CARUSO, each prepared official reports and court related documents regarding either or both the undercover operation in general and the identification of the plaintiff as the person who gave undercover SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO the laundered money on October 17, 2001.

33.    At the time of the preparation of such paperwork, defendants SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENT MARK CRANE prepared the reports and court-related documents in a deliberately indifferent manner and with a reckless disregard that there was never any reliable identification providing reasonable and just cause to believe that the person who delivered the laundered money to SN SI CASUSO was the plaintiff, DIEGO ALCANTATA, by either SN SI CASUSO or any of the three DEA special agents, SA CRANE, OLDANO, DELLAMARA, or JOHN DOE, who were part of the back-up team responsible for surveillance of the transactions and protection of the undercover officer, all under the supervision of SA CARUSO.

34.   Defendants SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS MARK CRANE knew that the United States Attorney s Office and the Court would rely on their investigative reports and other court-related documents prepared with deliberate indifference and a wholly reckless disregard of whether the correct person was targeted for investigation, arrested, detained, incarcerated and prosecuted for the crimes set forth hereinabove.

35.   The person both SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENT MARK CRANE identified in their reports, albeit, only tentatively identified, with deliberate indifference to verifying the correctness and accuracy of such tentative identification, and without any reasonable basis or probable cause whatsoever to make any actual identification, was the plaintiff, DIEGO ALCANTARA.

36.   Upon information and belief, the only fact relied upon by SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS MARK CRANE to tentatively identify the person who delivered the laundered money to SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO on October 17, 2001 was that the car driven by the person making the delivery was registered to the plaintiff DIEGO ALCANTARA.

37.   The plaintiff had cancelled the insurance on the car

that was used by another person to meet with SN SI CASUSO to
receive the money to be laundered, effective September 4, 2001,
more than a month prior to the illegal money transaction conducted
on October 17, 2001, due to problems he had with one of his sons
and his son s companions, and that son was deported, *inter alia,*
due to drug related crimes prosecuted by the Office of the Special
Narcotics Prosecutor for the City of New York, prior to the arrest
of the plaintiff on May 3, 2004.

38.   After the plaintiff s arraignment in the United States
District Court for the Southern District of New York on charges of
conspiring to engage in money laundering and money laundering of
narcotics proceeds affecting interstate and foreign commerce, the
plaintiff was transferred to the Metropolitan Correctional Center
located at 150 Park Row, New York, New York 10007 at approximately
6:30 p.m. on May 3, 2004, where he was held on a high bail that he
was unable to make.

39.   Notwithstanding that the plaintiff had not done anything
wrong and had not committed any crime on October 17, 2001, or any
other day before his arrest on May 3, 2004, the plaintiff was
unconstitutionally deprived of his liberty, falsely imprisoned,
falsely charged, maliciously prosecuted and subjected to abuse of
the legal process.

40.   At no time on October 17, 2001 or at any time prior to
his arrest on May 3, 2001, did plaintiff DIEGO ALCANTARA ever
deliver laundered money to SPECIAL NARCOTICS SENIOR INVESTIGATOR

ROGER CASUSO or conspire to engage in money laundering, or engage in money laundering of narcotics proceeds affecting interstate and foreign commerce.

41.  The plaintiff hired a private attorney and had a meeting with the Assistant United States Attorney and several federal agents.

42.  The plaintiff s criminal defense attorney repeatedly questioned whether any identification of the plaintiff had ever been made, specifically repeatedly requested that the prosecutor arrange to have the agents see the man who had been arrested for this crime, the plaintiff DIEGO ALCANTARA, who was far older than the other numerous criminal defendants charged in the money laundering conspiracy, and who had never been arrested or convicted of any crime, and investigate the information that the defense attorney provided to him, including the facts set forth above.

43.  After approximately 72 days in jail, from May 3, 2001 to July 14, 2001, the plaintiff was released on bail that had been reduced by the Honorable Harold Baer.

44.  Throughout his incarceration and prosecution, despite his never having been arrested before, his never having been incarcerated before, his risk of spending many, many years in federal prison, the plaintiff steadfastly maintained his innocence and was proceeding to trial that was scheduled to commence on Monday, January 10, 2005, until the Assistant United States Attorney called the plaintiff s criminal defense attorney on or

about January 8, 2005 and informed him that they decided to *nolle prosequi* the case in the interest of justice.

45.   The plaintiff was imprisoned, charged and prosecuted with crimes that he did not commit up until the very eve of trial.

46.   The plaintiff thought that he would lose his mind during the time when he was incarcerated for crimes that he knew nothing about and did not commit.

47.   The plaintiff s elderly father was very sick during the time of his incarceration and prosecution and the plaintiff was unable to assist him in his time of need.

48.   As a condition of his bail, the plaintiff was required to report to a pre-trial probation services officer about twice a week; his right to travel was limited to only the Southern and Eastern Districts for work purposes; he made court appearances throughout the duration of the prosecution; and he lived with the threat of prosecution on major charges that he was falsely accused of committing for about seven months.

49.   There was no probable or just cause for the criminal proceeding to have been brought and there was no likelihood that a full and fair hearing of the charges would have resulted in a successful prosecution of the plaintiff by the individual defendant agents and investigators and officers involved in the case.

50.   The filing of false criminal charges against the plaintiff and the wrongful imprisonment of the plaintiff were,

because of defendant special agent and special investigator s knowledge of a lack of any legitimate cause or justification for such arrest and imprisonment, intentional, malicious, reckless, and in bad faith.

51. Defendants THE CITY OF NEW YORK, CASUSO, CRANE, OLDANO, DELLAMARA, JOHN DOE and CARUSO acted with actual malice in providing the information that caused the plaintiff to be arrested on false charges, and caused him to be arraigned in the District Court of the SOUTHERN DISTRICT OF NEW YORK and prosecuted on a charge that the defendants knew were false, or recklessly, wantonly and with deliberate indifference to whether the plaintiff actually was the correct person who committed a crime on October 17, 2001. Defendants THE CITY OF NEW YORK, CASUSO, CRANE, OLDANO, DELLAMARA, JOHN DOE and CARUSO brought these charges against the plaintiff and purposefully misused the police powers and the courts, to recklessly, wantonly and with deliberate indifference to whether the plaintiff was the actual perpetrator of the crime for which he was prosecuted, to wrongfully imprison and maliciously prosecute the plaintiff.

52. As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

53. As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, malicious prosecution, the stress of

preparing to stand trial on serious federal charges and thereby facing many years of imprisonment, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 USC § 1983**

54.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-53 of this complaint, as though fully set forth herein.

55. All of the aforementioned acts of defendants THE CITY OF NEW YORK and SN SI ROGER CASUSO, their agents, servants and employees, were carried out under the color of law.

56. The actions of the individual defendant CASUSO, a member of the Office of the Special Narcotics Prosecutor, while acting under color of state law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular the rights to be secure in his person, to due process under the law, and the concomitant rights to be free from false imprisonment, malicious prosecution and the intentional and/or negligent infliction of emotional distress.

57.    The acts complained of were carried out by the individual defendant CASUSO in his capacity as a senior investigator of the Office of the Special Narcotics Prosecutor of the City of New York, with all the actual and apparent authority attendant thereto.

58.  The acts complained of were carried out by CASUSO in his capacity as a senior investigating officer, pursuant to the customs, usages, practices, procedures, and rules of the City of New York and the Office of the Special Narcotics Prosecutor, all under the supervision of ranking officers of said department.

59.  The individual defendant CASUSO, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of his municipality, which is forbidden by the Constitution of the United States.

60.  By these actions, the individual defendant CASUSO deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983, for which the defendant is individually liable.

61.  As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

## SECOND CLAIM FOR RELIEF
## FALSE IMPRISONMENT ARREST UNDER 42 U.S.C. § 1983

62.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-61 of this complaint, as though fully set forth herein.

63.  As a result of the aforementioned conduct, plaintiff

DIEGO ALCANTARA was subjected to an illegal, improper and false imprisonment by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege or consent.

64.  As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

### THIRD CLAIM FOR RELIEF
### MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983

65.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-64 of this complaint, as though fully set forth herein.

66.  Defendants misrepresented and falsified evidence, or acted with recklessly, wantonly and with deliberate indifference as to the correctness or incorrectness of their information before the United States Attorney for the Southern District of New York.

67.  Defendants did not make a complete and full statement of facts to the United States Attorney for the Southern District of New York.

68.  Defendants withheld exculpatory evidence from the United States Attorney for the Southern District of New York.

69.  Defendants misrepresented and falsified evidence before the Grand Jury.

70.   Defendants did not make a complete and full statement of facts to the Grand Jury.

71. Defendants withheld exculpatory evidence from the Grand Jury.

72.   Defendants were directly and actively involved in the initiation of criminal proceedings against DIEGO ALCANTARA, and providing false information in support of the warrant application

73.   Defendants lacked probable cause to initiate criminal proceedings against DIEGO ALCANTARA.

74.   Defendants acted with actual malice in initiating criminal proceedings against DIEGO ALCANTARA and with a reckless disregard and wanton and deliberate indifference to the truth of their assertions regarding the plaintiff as the perpetrator of the crime he was charged with.

75.   Defendants were directly and actively involved in the continuation of criminal proceedings against DIEGO ALCANTARA.

76.   Defendants lacked probable cause to continue criminal proceedings against DIEGO ALCANTARA.

77.   Defendants acted with malice in continuing criminal proceedings against DIEGO ALCANTARA.

78.   Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in DIEGO ALCANTARA s favor on January 10, 2005, when the prosecutor decided to nolle prosequi his case.

79.   As a result of the foregoing, the plaintiff sustained,

*inter alia*, loss of liberty, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of her constitutional rights.

**FOURTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY**

80.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-79 of this complaint, as though fully set forth herein.

81.  Defendant CITY OF NEW YORK, as a matter of policy and practice, has with deliberate indifference failed to adequately discipline, train or otherwise direct special investigators with the Office of Special Narcotics, including the defendant special investigator CASUSO, with regard to the rights of citizens, thereby causing the defendant officers in this case to engage in the unlawful conduct described above.

82.  Defendant CITY OF NEW YORK, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers, including the defendants in this case, for violations of the constitutional rights of the persons within its domain, thereby causing police, including defendants in this case, to engage in the unlawful conduct described above.

83.  Defendant CITY OF NEW YORK, in its policies and practices, has with deliberate indifference, failed to follow

procedures for supervising and removing, when appropriate, unstable, malicious, violent, abusive, dishonest and biased police officers from their duties.

84.   Defendant CITY OF NEW YORK, and the Office of the Special Narcotics Prosecutor, knew or should have known that prior to October 17, 2001, the perpetration of unlawful arrests, the commission of perjury and other malicious, and inappropriate unlawful acts by defendant officer was occurring, in that it is believed that there may have been complaints of such unlawful conduct by this particular investigator, but defendant CITY OF NEW YORK failed to take appropriate steps to eliminate such unlawful acts.

85.   The acts and conduct of defendant CITY OF NEW YORK as set forth above in paragraphs 1-84 deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular the rights to be secure in his person and property, to due process under the law, and the right to be free from unlawful seizure, false imprisonment, and from malicious prosecution and the intentional and/or negligent infliction of emotional distress.

86.   By these actions, defendant CITY OF NEW YORK has deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

87.   As a result of the foregoing, the plaintiff sustained,

*inter alia*, loss of liberty, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of her constitutional rights.

### THIRD CLAIM FOR RELIEF
### MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983

88.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-87 of this complaint, as though fully set forth herein.

89.    Plaintiff s rights were violated by the other United States agents as described above pursuant to the Bivens case.

**WHEREFORE**, Plaintiff demands judgment against the defendants, jointly and severally, and in favor of the plaintiff as follows:

a.    Compensatory damages in the amount of One Million ($1,000,000) dollars;

b. Punitive damages in the amount of Five Hundred Thousand ($1,000,000) dollars;

c. Reasonable attorneys fees, costs and disbursements of this action; and

d. Such other and further relief as this Court deems just and proper.

DATED: New York, New York
       July 14, 2007

Respectfully,

_____

JOANNE M. DWYER (JMD-9852)
Attorney for Plaintiff
225 Broadway, 41st Floor
New York, NY 10007
(212) 233-0591