UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

DIEGO ALCANTARA,

                                        Plaintiff,

                    -against-


THE CITY OF NEW YORK, OFFICE OF THE SPECIAL
NARCOTICS PROSECUTOR FOR THE CITY OF NEW
YORK SENIOR INVESTIGATOR ROGER CASUSO,
Individually and as Senior Investigator for the Office of the
Special Narcotics Prosecutor for the City of New York,
UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
SPECIAL AGENT MARK CRANE, UNITED STATES
DEPARTMENT OF JUSTICE DRUG ENFORCEMENT
ADMINISTRATION SPECIAL AGENT JOHN OLDANO,
UNITED STATES DEPARTMENT OF JUSTICE DRUG
ENFORCEMENT ADMINISTRATION SPECIAL
AGENT F/N/U DELLAMARA, and UNITED STATES
DEPARTMENT OF JUSTICE DRUG ENFORCEMENT
ADMINISTRATION Group Supervisor NICHOLAS
CARUSO, all individual USDOJ DEA Defendants are
being sued in their individual capacities,

                                        Defendants.
-------------------------------------------------------------------------x

**FIRST AMENDED
COMPLAINT AND
DEMAND FOR
JURY TRIAL**


**07 CV 6480
(JGK)(JCF)**

**ECF Case**


## <u>INTRODUCTION</u>

    1.  This is an action for compensatory damages, punitive damages and attorney's fees for

the wrongful acts of defendants THE CITY OF NEW YORK, OFFICE OF THE SPECIAL

NARCOTICS PROSECUTOR FOR THE CITY OF NEW YORK SENIOR INVESTIGATOR

ROGER CASUSO, acting under color of state law and pursuant to their authority, UNITED

STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS MARK CRANE, JOHN OLDANO, F/N/U DELLAMARA, acting as federal agents and pursuant to their authority, and UNITED STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION Group Supervisor NICHOLAS CARUSO, acting as a federal agent and pursuant to his authority in violation of plaintiff's rights under the Constitution and laws of the United States.

2.      Plaintiff alleges that beginning on or about April 20, 2004, when a "no arrest" indictment S1 04 Cr. 345 (HB) was filed charging plaintiff DIEGO ALCANTARA, among others, with conspiracy to commit money laundering and money laundering in violation of Title 18, United States Code, Section 1956, and continuing with the arrest of plaintiff DIEGO ALCANTARA on or about May 3, 2004, and continuing with the filing of a superseding indictment S2 04 Cr. 345 (HB), on or about May 3, 2004, and continuing throughout the time that plaintiff was incarcerated at the Metropolitan Correctional Center until the plaintiff DIEGO ALCANTARA was released on bail on or about July 14, 2004, and continuing until the plaintiff's criminal case with respect to indictment S2 04 Cr. 345 (HB) and all underlying indictments were dismissed pursuant to an order of *nolle prosequi* signed by Assistant United States Attorney Boyd M. Johnson III, and United States Attorney, Southern District of New York, David N. Kelley, and the Honorable Harold Baer, Jr., United States District Judge, on January 10, 2005, defendants committed wrongful and illegal acts against plaintiff, including violating plaintiff's Constitutional and civil rights by wrongfully imprisoning and maliciously prosecuting him for acts of which the plaintiff was wholly innocent, without any probable or just cause, and with extreme and wanton recklessness and unjustifiable deliberate indifference to the Constitutional rights of the plaintiff.

**JURISDICTION**

3.    This action is brought under 42 U.S.C. Sections 1981, 1983, 1985 and 1988, in conjunction with the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388, 29 L.Ed.2d 619, 91 S.Ct. 1999 (1971).

4.    Jurisdiction is invoked herein pursuant to the aforementioned statutory and Constitutional provisions, federal case law and pursuant to 28 U.S.C. Section 1331 and 1343, this being an action seeking redress for the violation of the plaintiff's Constitutional and civil rights.

**VENUE**

5.    Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. Section 1391(b) in that the incident arose in the Southern District of New York.

**JURY DEMAND**

6.    Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

7.    At all times relevant hereto, plaintiff DIEGO ALCANTARA, was and is a citizen of the United States and resident of Queens County, in the City and State of New York.

8.    At all times relevant hereto, defendant, the CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.  Defendant, the CITY OF NEW YORK, maintains the Office of the Special Narcotics

Prosecutor for New York City, a duly organized prosecutorial agency, authorized to perform all functions of a prosecutorial agency as per the applicable sections of the New York State Judiciary Laws, with jurisdiction to investigate and prosecute major drug trafficking crimes in the five counties of New York City, which, together with New York City, employs special investigators, officers and prosecutors for that office, including defendant SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, acting under the direction and supervision of the aforementioned municipal corporation, the CITY OF NEW YORK.

10.    At all times relevant hereto, the individually named defendant, SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, was a duly sworn senior narcotics investigator, employed by the Office of the Special Narcotics Prosecutor for New York City and acting under the supervision of the Office of the Special Narcotics Prosecutor for New York City and according to his official duties.  He is being sued in both his individual and official capacity.

11.    At all times relevant hereto, the defendants THE CITY OF NEW YORK and SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, either personally or through their employees, were acting under color of state law.

12.    At all times relevant hereto and in all their actions described herein, the defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the Office of the Special Narcotics Prosecutor for the City of New York, New York City, and the State of New York, pursuant to their authority as employees, servants and agents of the Office of the Special Narcotics Prosecutor for the City of New York, within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents, officers and senior investigators.

4

13.   At all times relevant hereto, the individually named defendants, UNITED STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS MARK CRANE, JOHN OLDANO, F/N/U DELLAMARA, and Group Supervisor NICHOLAS CARUSO were duly sworn special agents, employed by The United States Department of Justice, Drug Enforcement Agency, and acting under the supervision of The United States Department of Justice, Drug Enforcement Agency and according to his official duties.  Each individually named special agent defendant is being sued in his individual capacity.

## FACTUAL BACKGROUND

14.   On or about May 3, 2004, the plaintiff was handcuffed and arrested in his home located in Corona, Queens County at about 6:00 a.m. while his wife and children were at home by, upon information and belief, agents from the Drug Enforcement Administration, acting pursuant to an arrest warrant, based upon information provided by SPECIAL NARCOTICS SENIOR INVESTIGATOR (hereinafter also "SN SI") ROGER CASUSO, acting in an undercover capacity, and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS (hereinafter also "DEA SA or SA") MARK CRANE, JOHN OLDANO, F/N/U DELLAMARA and NICHOLAS CARUSO, all of whom were jointly involved in a long-term money laundering investigation.

15.   The arresting agents searched the plaintiff's home but failed to find any evidence of any criminal activity or enterprise.

16.   The arresting agents took the plaintiff by car to a federal field office located at Eleventh Avenue between 16th and 17th Streets in Manhattan.

5

17. During the ride, the plaintiff repeatedly told the arresting agents that they were making a mistake.

18. At the field office, upon information and belief, a federal agent from the Drug Enforcement Administration, who spoke only some Spanish, interrogated the plaintiff, who speaks some English, but whose primary language is Spanish.

19. The interrogating agent questioned the plaintiff in a very intimidating manner and told the plaintiff that he was caught in a really big case and that he could be locked up for twenty (20) years.

20. The interrogating agent also said they had videos of the plaintiff receiving money and giving it to the undercover agent.

21. Upon hearing about the video recordings, the plaintiff stated words to the effect that that was good, because then he would be able to prove that he was not the person in the video.

22. After a while, a female began translating, but she was not actually proficient in the Spanish language.

23. The interrogating agent advised the plaintiff that it would be better for him if he told the agent everything he knew. The agent asked DIEGO ALCANTARA to provide him with names of others involved and repeated that he was in big trouble and he had to talk to them.

24. The plaintiff, DIEGO ALCANTARA, who was a fifty (50) year old hard-working family man at the time, told the agents that they were making a mistake and that he did not have any information to provide to them because he did not know anything about what they were charging him with.

6

25.    The plaintiff saw cameras in the room where he was questioned, but did not know whether he was being videotaped.

26.    After remaining at the field office for approximately one hour, the plaintiff was transported to the United States Courthouse for the Southern District of New York located at 500 Pearl Street, New York, New York 10013.

27.    The plaintiff met briefly with an attorney assigned by the Criminal Justice Agency and was arraigned on charges of conspiring to engage in money laundering in violation of Section 1956(a)(1)(B)(i) of Title 18, United States Code and money laundering of narcotics proceeds affecting interstate and foreign commerce in violation of Section 1956(a)(1)(B)(i) and 2 of Title 18, United States Code.

28.    The overt act that the plaintiff was alleged to have committed in the conspiracy and the basis for the money laundering charge occurred on October 17, 2001, when the plaintiff was charged with having possessed $135,616.00 in illegal narcotics proceeds, that he transferred to an undercover law enforcement officer, defendant SN SI ROGER CASUSO, on the southwest corner of 125th Street and Broadway, in Manhattan, New York.

29.    On October 17, 2001, UNITED STATES DEPARTMENT of JUSTICE DEA SA MARK CRANE, JOHN OLDANO, and DELLAMARA were among the officers and agents that were part of the field team backing up undercover SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, all of whom were acting under the supervision of UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION Group Supervisor NICHOLAS CARUSO.

30.  The laundered money pickup that occurred on October 17, 2001, which was the basis for the arrest, imprisonment and prosecution of the plaintiff, was visually recorded with surveillance cameras and video equipment with zoom capabilities by the field team that consisted of agents from the New York Division Office Group D-31 of the Drug Enforcement Administration and investigators from the Manhattan Office of the Special Narcotics Prosecutor.

31.  The laundered money pickup that occurred on October 17, 2001, which was the basis for the arrest, incarceration and prosecution of the plaintiff, was recorded by undercover SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO, and the original Kel audio-cassette tape was preserved for evidence.

32.  SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DEA SA MARK CRANE, under the supervision of UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION Group Supervisor NICHOLAS CARUSO and other agents, each prepared official reports and court related documents regarding the undercover operation and the October 17, 2001 laundered money pickup and delivery that led to the arrest of the plaintiff, based only upon identifying information regarding the car that was used by the person who actually made the pickup and delivered the money to undercover SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO.

33.  At the time of the preparation of such paperwork, defendants SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENT MARK CRANE prepared the reports and court-related documents, including presumably, affidavits in support of a

search and/or arrest warrant for the plaintiff, in a deliberately indifferent manner and with a reckless disregard that there was never any reliable identification procedure, or any identification procedure at all, providing reasonable and just cause to believe that the person who delivered the laundered money to SN SI CASUSO was the plaintiff, DIEGO ALCANTATA, by either SN SI CASUSO or any of the three DEA special agents, SA CRANE, OLDANO, and DELLAMARA, who were part of the back-up team responsible for surveillance of the transactions and protection of the undercover officer, all under the supervision of SA CARUSO.       34.    Defendant  SA  MARK CRANE wrote an October 17, 2001 report concerning the surveillance of the money pickup that occurred the same day and referred to the person from whom the undercover officer was to receive the money as "an unidentified Dominican male (Subsequently identified as ALCANTARA, Diego)" and makes reference to a DEA [Form] 6 written by CRANE titled "Identification of ALCANTARA," a report dated the following day, October 18, 2001 and a second DEA UC 6 written to the file by "SA" CASUSO.  Defendant Supervisor CARUSO approved and signed the CRANE's October 17, 2001 surveillance report.

35.  In another report written by defendant CRANE dated October 17, 2001 concerning the acquisition of Exhibits related to the October 17, 2001 transaction (the Kel cassette tape, Polaroid photographs of the delivered money, and the bank deposit slip), CRANE used the phrase "male Hispanic target, later 'tentatively identified' as ALCANTARA, Diego S." (emphasis added).

36.  The United States Department of Justice Drug Enforcement Administration Report of Investigation form with the subject "Identification Report of Diego S. Alcantara" dated October 18, 2001, referred to by CRANE as described in paragraph 34 above, indicates no actual identification of the person who participated in the money laundering transaction, but merely the identification of

a car that the male Hispanic drove to the pickup and delivery locations on October 17, 2001. The details of the report indicate that: (1) Group D-31 picked up money from a Hispanic male and surveillance units saw him driving a 1995 red Ford Escort; (2) further investigation connected the vehicle's tag to Diego S. Alcantara; and (3) Special Agent Mark Crane noted that he sent a subpoena to the Department of Motor Vehicles for a photograph of the Diego S. Alcantara. Thus, the identification report only identified the person who had at some time registered the CAR USED by the male Hispanic person that undercover SN SI CASUSO dealt with during the October 17, 2001 transaction.

37.  The DEA UC 6 report ultimately signed by SN SI CASUSO indicates in the "date prepared box" the typed date of October 18, 2001; however it was signed by CASUSO on October 26, 2001. The report indicates that CASUSO working in an undercover capacity "received a telephone call from a male Dominican subject, later identified as ALCANTARA, Diego. . . . Reference is made to a DEA 6 titled identification of ALCANTARA, Diego by SA Mark Crane." CASUSO refers to CRANE's report that traced the tag of the car used by the male Dominican subject to DIEGO ALCANTARA as the identification.

38.  Group Supervisor CARUSO approved the report by signing it on December 4, 2001. CRANE refers to the report by CASUSO and CASUSO refers to the report by CRANE. Notably absent is any identification procedure by anyone who participated in or observed the transaction. One report references another report that references another report with the end result that no actual identification of DIEGO ALCANTARA ever took place.

39.  No follow up report ever indicated that any photograph was received from the Department of Motor Vehicles. If any such photograph was received, no report indicates that it was

10

reviewed or shown to anyone for identification purposes, or that any person who had observed the transaction made any in-person identification of Mr. Alcantara.

40.  Had defendant SN SI CASUSO who dealt with the male Hispanic individual face to face been afforded the opportunity to promptly view the plaintiff's photograph, he would have immediately known that the plaintiff DIEGO ALCANTARA was not the person he had dealt with in the money laundering transaction on October 17, 2001.

41.  A November 4, 2001 DEA 6 report written by another Special Agent in reference to "Money Flow Report Transaction #2, DOF #2-008" makes reference to all previous DEA Reports of Investigation and picks up the "tentatively identified" language with respect to Diego Alcantara. The report appears to be approved and signed by Group Supervisor CARUSO, but the date he signed the report is not indicated.

42.  As late as May 7, 2003, about a year before DIEGO ALCANTARA was arrested, a DEA 6 report written by another Special Agent regarding "Transaction #2 Amendment" notes that on October 17, 2001, an undercover "assigned to the New York Division picked up an alleged amount of $150,000.00 in United States Currency (USC) from an individual ***tentatively identified as Diego ALCANTARA***" and refers to the October 18, 2001 Money Flow Report. (emphasis added).

43.  Paragraph 2 of the same report noted that a subsequent currency count by HSBC Bank on October 18, 2001 determined the total currency value of Transaction #2 to be $135,616.00 in USC.   The difference was $14,384.00 ($14,364.00 + $20.00 in counterfeit currency).   No explanation for the discrepancy is provided.

44.  Group Supervisor CARUSO approved and signed the report on May 9, 2003.

45.  Defendants SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS MARK CRANE and Group Supervisor NICHOLAS CARUSO knew that the United States Attorney's Office and the Court would rely on their investigative reports and other court-related documents.

46.  These reports were prepared with deliberate indifference and a wholly outrageous reckless disregard of whether the person who actually participated in the October 17, 2001 money laundering transaction was the same person who was quickly targeted solely by the identification of a car that had been registered in his name.

47.  DIEGO ALCANTARA was arrested two and one half years after the October 17, 2001 occurrence.  No one identified him at the time of the money laundering transaction and no one identified him after his arrest.  No identification procedure whatsoever was ever conducted, and yet DIEGO ALCANTARA was arrested, detained, incarcerated and prosecuted for the crimes set forth hereinabove that he did not commit.

48.  But for the wholly outrageously reckless and deliberately indifferent, willful disregard of DIEGO ALCANTARA's constitutional rights, the fact that he was not the person who participated in the October 17, 2001 money laundering transaction would have been readily and easily discovered long before the plaintiff was arrested, spent months in jail and many more months appearing in court to face the serious federal criminal charges in a large multi-defendant case.

49.  Upon information and belief, the only fact relied upon by SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO and UNITED STATES DEPARTMENT of JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS MARK CRANE

to tentatively identify the person who delivered the laundered money to SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO on October 17, 2001 was that the car driven by the person making the delivery was registered to the plaintiff DIEGO ALCANTARA.

50.  The plaintiff had cancelled the insurance on the car that was used by another person to meet with SN SI CASUSO effective September 4, 2001, more than a month prior to the illegal money transaction conducted on October 17, 2001, due to problems he had with one of his sons and his son's companions.  That son was deported, *inter alia,* due to drug related crimes that were prosecuted by the Office of the Special Narcotics Prosecutor for the City of New York, prior to the arrest of the plaintiff on May 3, 2004.

51.  After the plaintiff's arraignment in the United States District Court for the Southern District of New York on charges of conspiring to engage in money laundering and money laundering of narcotics proceeds affecting interstate and foreign commerce, the plaintiff was transferred to the Metropolitan Correctional Center located at 150 Park Row, New York, New York 10007 at approximately 6:30 p.m. on May 3, 2004, where he was held on a high bail that he was unable to make.

52.  Notwithstanding that the plaintiff had done nothing wrong and had not committed any crime on October 17, 2001, or any other day before his arrest on May 3, 2004, the plaintiff was unconstitutionally deprived of his liberty, falsely imprisoned, falsely charged, and maliciously prosecuted.

53.  At no time on October 17, 2001 or at any time prior to his arrest on May 3, 2001, did plaintiff DIEGO ALCANTARA ever deliver laundered money to SPECIAL NARCOTICS SENIOR INVESTIGATOR ROGER CASUSO or conspire to engage in money laundering, or

engage in money laundering of narcotics proceeds affecting interstate and foreign commerce.

54.  The plaintiff hired a private attorney and had a meeting with the Assistant United States Attorney and several federal agents.

55.  The plaintiff's criminal defense attorney repeatedly questioned whether any identification of the plaintiff had ever been made and specifically repeatedly requested that the prosecutor arrange to have the agents and the investigator from the Office of the Special Narcotics Prosecutor see the man who had been arrested for this crime, the plaintiff DIEGO ALCANTARA, who was far older than the other numerous criminal defendants charged in the money laundering conspiracy, and who had never been arrested or convicted of any crime.  The defense attorney literally begged the prosecutor and the agents to investigate the information that the he provided to them, including the facts regarding the cancelled insurance set forth above.

56.  After approximately 72 days in jail, from May 3, 2001 to July 14, 2001, the plaintiff was released on bail that had been reduced by the Honorable Harold Baer.

57.  Throughout his incarceration and prosecution, despite his never having been arrested before, his never having been incarcerated before, his risk of spending many, many years in federal prison, the plaintiff steadfastly maintained his innocence and was proceeding to trial that was scheduled to commence on Monday, January 10, 2005.

58.  After the defense attorney requested the specific location of where the surveillance photographs and video were taken in order to have an expert witness testify regarding the characteristics such as height and weight of the person in the photograph as compared to the plaintiff standing in the same position photographed from the same location, the Assistant United States Attorney called the plaintiff's criminal defense attorney on or about January 8, 2005 and

14

informed him that they decided to *nolle prosequi* the case in the interest of justice (since of course, it is unjust to prosecute an innocent man, who was never identified as the perpetrator of the crime and who was, in fact, not the perpetrator of the crime of which he was accused). In other words, the plaintiff was and is actually innocent of the crimes that he was accused of committing.

60. The plaintiff was imprisoned, charged and prosecuted with crimes that he did not commit up until the very eve of trial. 61. The plaintiff thought that he would lose his mind during the time when he was incarcerated for crimes that he knew nothing about and did not commit.

62. The plaintiff's elderly father was very sick during the time of his incarceration and prosecution and the plaintiff was unable to assist him in his time of need due to the travel restrictions imposed as part of his bail conditions.

63. As a condition of his bail, the plaintiff was required to report to a pre-trial probation services officer about twice a week; his right to travel was limited to only the Southern and Eastern Districts for work purposes; he made court appearances throughout the duration of the prosecution; and he lived with the threat of prosecution on major charges that he was falsely accused of committing for about seven months.

64. There was no probable or just cause for the criminal proceeding to have been brought and there was no likelihood that a full and fair hearing of the charges would have resulted in a successful prosecution of the plaintiff by the individual defendant agents, investigators, officers and supervisors involved in the case.

65. The filing of false criminal charges against the plaintiff and the wrongful imprisonment of the plaintiff were, because of defendant special agent and special investigator's knowledge of a lack of any legitimate cause or justification for such arrest and imprisonment,

intentional, malicious, reckless, and in bad faith.

66.    Defendants THE CITY OF NEW YORK, CASUSO, CRANE, OLDANO, DELLAMARA and CARUSO acted with actual malice in providing, approving or otherwise backing without justification the information that caused the plaintiff to be arrested on false charges, and caused him to be arraigned in the District Court of the SOUTHERN DISTRICT OF NEW YORK and prosecuted on a charge that the defendants knew were false, or recklessly, wantonly and with deliberate indifference as to whether the plaintiff actually was the actual person who committed a crime on October 17, 2001.

67.    Defendants THE CITY OF NEW YORK, CASUSO, CRANE, OLDANO, DELLAMARA, and CARUSO brought these charges against the plaintiff and purposefully misused the police powers and the courts, to recklessly, wantonly and with deliberate indifference as to whether the plaintiff was the actual perpetrator of the crime for which he was prosecuted, to wrongfully imprison and maliciously prosecute the plaintiff.

68.    As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and federal case law, including *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

69.    As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, malicious prosecution, the stress of preparing to stand trial on serious federal charges and thereby facing many years of imprisonment, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 USC § 1983**

70.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-69 of this complaint, as though fully set forth herein.

71.     All of the aforementioned acts of defendants THE CITY OF NEW YORK and SN SI ROGER CASUSO, their agents, servants and employees, were carried out under the color of law.

72.   The actions of the individual defendant CASUSO, a member of the Office of the Special Narcotics Prosecutor, while acting under color of state law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular the rights to be secure in his person, to due process under the law, and the concomitant rights to be free from false imprisonment, malicious prosecution and the intentional and/or negligent infliction of emotional distress.

73.   The acts complained of were carried out by the individual defendant CASUSO in his capacity as a senior investigator of the Office of the Special Narcotics Prosecutor of the City of New York, with all actual and apparent authority attendant thereto.

74.   The acts complained of were carried out by CASUSO in his capacity as a senior investigating officer, pursuant to the customs, usages, practices, procedures, and rules of the City of New York and the Office of the Special Narcotics Prosecutor, all under the supervision of ranking officers of said department.

75.   The individual defendant CASUSO, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of his municipality, which is forbidden by the Constitution of the United States, namely, to deprive a person of liberty and to

17

actively engage in acts leading to the wrongful prosecution of an individual without due process or probable cause or participation in any constitutionally reasonable identification procedure to protect against the arrest, incarceration and prosecution of an innocent man.

76.    By these actions, the individual defendant CASUSO deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983, for which the defendant is individually liable.

77.    As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, wrongful prosecution, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

## SECOND CLAIM FOR RELIEF
## FALSE IMPRISONMENT ARREST UNDER 42 U.S.C. § 1983

78.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-77 of this complaint, as though fully set forth herein.

79.    As a result of the aforementioned conduct, plaintiff DIEGO ALCANTARA was subjected to an illegal, improper and false imprisonment by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege or consent.

80.    As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

## THIRD CLAIM FOR RELIEF
## <u>MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983</u>

81.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-80 of this complaint, as though fully set forth herein.

82.   Defendants misrepresented and falsified evidence, or acted recklessly, wantonly and with deliberate indifference as to the correctness or incorrectness of their information before the United States Attorney for the Southern District of New York.

83.   Defendants did not make a complete and full statement of facts to the United States Attorney for the Southern District of New York.

84.   Defendants withheld exculpatory evidence from the United States Attorney for the Southern District of New York.

85.   Defendants misrepresented and falsified evidence before the Grand Jury.

86.   Defendants did not make a complete and full statement of facts to the Grand Jury.

87.  Defendants withheld exculpatory evidence from the Grand Jury.

88.   Defendants were directly and actively involved in the initiation of criminal proceedings against DIEGO ALCANTARA, and providing false information in support of the warrant application.

89.   Defendants lacked probable cause to initiate criminal proceedings against DIEGO ALCANTARA.

90.   Defendants acted with actual malice in initiating criminal proceedings against DIEGO ALCANTARA and with a reckless disregard and wanton and deliberate indifference to the truth of their assertions that the plaintiff was the perpetrator of the crime he was charged with.

91.    Defendants were directly and actively involved in the continuation of criminal proceedings against DIEGO ALCANTARA.

92.    Defendants lacked probable cause to continue criminal proceedings against DIEGO ALCANTARA.

93.    Defendants acted with malice in continuing criminal proceedings against DIEGO ALCANTARA.

94.    Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in DIEGO ALCANTARA's favor on January 10, 2005, when the prosecutor decided to *nolle prosequi* his case, as plaintiff absolutely was not the person who received or gave the undercover officer laundered money.

95.    As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

## FOURTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY

96.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-95 of this complaint, as though fully set forth herein.

97.    Defendant CITY OF NEW YORK, as a matter of policy and practice, has with deliberate indifference failed to adequately discipline, train or otherwise direct special investigators with the Office of Special Narcotics, including the defendant special investigator CASUSO, with regard to the constitutional rights of citizens and the necessity of conducting identification

procedures designed to minimize the possibility of mistaken identification, (not to mention to insure that an identification procedure is actually conducted), and the personal responsibility of each investigator or officer to rigorously guard against false arrests caused by unfair, unduly suggestive, or otherwise unreliable identification procedures, (or no identification procedures at all) whether or not they are part of a team working with Drug Enforcement Administration agents.

98.    Defendant CITY OF NEW YORK, as a matter of policy and practice, has with deliberate indifference failed to adequately discipline, train or otherwise direct special investigators with the Office of Special Narcotics, including the defendant special investigator CASUSO, with regard to the constitutional rights of individuals and has encouraged a "passing the buck" mentality, especially with respect to joint investigations with the Drug Enforcement Administration, that allows an officer or investigator to avoid personal responsibility to insure against, to the degree humanly possible, false arrests and wrongful and malicious prosecutions, one of the greatest tragedies of the criminal justice system, thereby causing the defendant investigators and officers in this case to engage in the unlawful conduct described above.

99.    Defendant CITY OF NEW YORK, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers, including the defendants in this case, for violations of the constitutional rights of the persons within its domain, thereby causing police, including defendants in this case, to engage in the unlawful conduct described above.

100.  Defendant CITY OF NEW YORK, in its policies and practices, has with deliberate indifference, failed to follow procedures for supervising and removing, when appropriate, dishonest and biased police officers from their duties.

101.    Defendant CITY OF NEW YORK, and the Office of the Special Narcotics Prosecutor, knew or should have known that prior to October 17, 2001, the perpetration of unlawful arrests, the commission of perjury and other malicious, and inappropriate unlawful acts by defendant officer was occurring, in that it is believed that there may have been complaints of such unlawful conduct by this particular investigator, but defendant CITY OF NEW YORK failed to take appropriate steps to eliminate such unlawful acts.

102.    The acts and conduct of defendant CITY OF NEW YORK as set forth above in paragraphs 1-101 deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular the rights to be secure in his person and property, to due process under the law, and the right to be free from unlawful seizure, false imprisonment, and from malicious prosecution and the intentional and/or negligent infliction of emotional distress.

103.    By these actions, defendant CITY OF NEW YORK has deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

104.    As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 USC § 1983
## BIVENS ACTION

105.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-104 of this complaint, as though fully set forth herein.

106.    The actions and conduct of each individual defendant UNITED STATES

DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS, including MARK CRANE, JOHN OLDANO, F/N/U DELLAMARA, and Group Supervisor NICHOLAS CARUSO, who participated directly in the operation as described above, violated the rights of the plaintiff to be free from unreasonable detention, search and seizure under the Fourth Amendment and to due process of law under the Fifth Amendment, and pursuant to federal case law including, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

107.   As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, emotional distress, traumatic stress, and other psychological damages, humiliation, and the deprivation of his constitutional rights.

### SIXTH CLAIM FOR RELIEF
### <u>MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983</u>
### <u>BIVENS ACTION</u>

108.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-107 of this complaint, as though fully set forth herein.

109.   The actions and conduct of each individual defendant UNITED STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENTS, including MARK CRANE, JOHN OLDANO, F/N/U DELLAMARA, and Group Supervisor NICHOLAS CARUSO, who particip88ed directly in the operation as described above, violated the right of the plaintiff to be free from malicious prosecution under the Fourth Amendment and to due process of law under the Fifth Amendment, pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

110.   As a result of the foregoing, the plaintiff sustained, *inter alia*, loss of liberty, emotional distress, traumatic stress, humiliation, and other psychological damages.

**WHEREFORE,** Plaintiff demands judgment against the defendants, jointly and severally, and in favor of the plaintiff as follows:

a. Compensatory damages in the amount of One Million ($1,000,000) dollars;

b. Punitive damages in the amount of Five Hundred Thousand ($1,000,000) dollars;

c. Reasonable attorneys fees, costs and disbursements of this action; and

d. Such other and further relief as this Court deems just and proper.

DATED:  New York, New York
        November 12, 2007

Respectfully,

*Joanne M. Dwyer*

JOANNE M. DWYER (JD-9852)
Attorney for Plaintiff
DIEGO ALCANTARA
225 Broadway, 41st Floor
New York, NY 10007
(212) 233-0591

24