Index No. 07 CV 6480 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIEGO ALCANTARA,

Plaintiff,

-against-

OFFICE OF THE SPECIAL NARCOTICS PROSECUTOR FOR
THE CITY OF NEW YORK UC 133, Individually and as an
undercover officer for the Office of the Special Narcotics Prosecutor
for the City of New York, UNITED STATES DEPARTMENT OF
JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL
AGENT MARK CRANE, UNITED STATES DEPARTMENT OF
JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL
AGENT JOHN OLDANO, UNITED STATES DEPARTMENT OF
JUSTICE DRUG ENFORCEMENT ADMINISTRATION SPECIAL
AGENT MICHAEL DELLAMARA, and UNITED STATES
DEPARTMENT OF JUSTICE DRUG ENFORCEMENT
ADMINISTRATION Group Supervisor NICHOLAS CARUSO, all
individual USDOJ DEA Defendants are being sued in their
individual capacities,

Defendants.

**DEFENDANT OFFICE OF THE SPECIAL NARCOTICS
PROSECUTOR FOR THE CITY OF NEW YORK UC # 133'S
MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
DISMISS OR, ALTERNATIVELY, FOR SUMMARY
JUDGMENT**

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for Defendant Office of the Special Narcotics*
*Prosecutor for the City of New York UC # 133*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Susan P. Scharfstein*
*Tel: (212) 227-4071*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………..…………iii

STATEMENT OF FACTS ........................................................................................3

    A.  Plaintiff's Allegations ........................................................................3

    B.  The "Operation White Dollar" Investigation........................................6

    C.  Plaintiff's Criminal Prosecution Was
        Concluded by Order of <u>Nolle</u> <u>Prosequi</u> ................................................7

ARGUMENT ........................................................................................................8

    POINT I

        PLAINTIFF'S FALSE ARREST CLAIM
        SHOULD BE DISMISSED BECAUSE HE WAS
        ARRESTED AFTER AN INDICTMENT
        WARRANT HAD ISSUED........................................................................9

    POINT II

        PLAINTIFF'S MALICIOUS PROSECUTION
        CLAIM AGAINST UC # 133 SHOULD BE
        DISMISSED BECAUSE HE CANNOT SATISFY
        ANY OF THE ELEMENTS OF THIS CLAIM ......................................11

    POINT III

        PLAINTIFF CANNOT SHOW THAT UC # 133
        VIOLATED HIS DUE PROCESS OR EQUAL
        PROTECTION RIGHTS ........................................................................15

    POINT IV

        UC # 133 IS ENTITLED TO QUALIFIED
        IMMUNITY AND, THEREFORE, ALL CLAIMS
        AGAINST HIM SHOULD BE DISMISSED ON
        THIS BASIS ALONE ............................................................................17

CONCLUSION........................................................................................................19

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                    <u>Pages</u>

<u>Albright v. Oliver</u>,
   510 U.S. 266 (1994)................................................................................15

<u>Anderson v. Creighton</u>,
   483 U.S. 635 (1987)............................................................................17, 18

<u>Anthony v. City of New York</u>,
   339 F.3d 129 (2d Cir. 2003)....................................................................18

<u>Batista v. City of New York</u>,
   2007 U.S. Dist. LEXIS 71905 (S.D.N.Y. Sept. 25, 2007)......................14

<u>Bell Atlantic v. Twombly</u>,
   127 S. Ct. 1955 (2007)..............................................................................8

<u>Bernard v. United States</u>,
   25 F.3d 98 (2d Cir. 1994).........................................................................9

<u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>,
   403 U.S. 388 (1971)..................................................................................2

<u>Broughton v. State</u>,
   37 N.Y.2d 451, 373 N.Y.S.2d 87 (1975).................................................9

<u>Brown v. City of Oneonta</u>,
   221 F.3d 329 (2d Cir. 2000)....................................................................16

<u>Bryant v. City of New York</u>,
   2003 U.S. Dist. LEXIS 21642 (S.D.N.Y. Dec. 2, 2003) ...................15, 16

<u>Campbell v. Guiliani</u>,
   2000 U.S. Dist. LEXIS 1617 (E.D.N.Y. Feb. 16, 2000).........................10

<u>Carson v. Lewis</u>,
   35 F. Supp. 2d 250 (E.D.N.Y. 1999) .................................................13, 18

<u>Cerrone v. Brown</u>,
   246 F.3d 194 (2d Cir. 2001).....................................................................9

<u>Coakley v. Jaffe</u>,
   72 F. Supp. 2d 362 (S.D.N.Y. 1999)
   <u>aff'd w/o pub. op.</u>, 234 F.3d 1261 (2d Cir. 2000)..................................10

**Cases**                                                                                                          **Pages**

Coons v. Casabella,
   284 F.3d 437 (2d Cir. 2002)....................................................................................9

Cortec Indus. v. Sum Holding L.P.,
   949 F.2d 42 (2d Cir. 1991)......................................................................................8

County of Sacramento v. Lewis,
   523 U.S. 833 (1998)...............................................................................................15

Covington v. City of New York,
   171 F.3d 117 (2d Cir. 1999)....................................................................................9

Crawford-el v. Britton,
   523 U.S. 574 (1998)...............................................................................................17

Cunny v. City of New York,
   2001 U.S. Dist. LEXIS 10806 (S.D.N.Y. July 31, 2001) ......................................14

Curley v. Village of Suffern,
   268 F.3d 65 (2d Cir. 2001)......................................................................................9

DeCristo v. City of New York,
   2004 U.S. Dist. LEXIS 9557 (S.D.N.Y. May 26, 2004).......................................14

Eastman Kodak v. Image Tech. Servs.,
   504 U.S. 451 (1992)................................................................................................8

Escalera v. Lunn,
   361 F.3d 737 (2d Cir. 2004)..................................................................................18

Golino v. City of New York,
   950 F.2d 864 (2d Cir. 1991)..................................................................................10

Green v. Bauvi,
   46 F.3d 189 (2d Cir. 1995)....................................................................................10

Green v. Montgomery,
   219 F.3d 52 (2d Cir. 2000)....................................................................................14

Hernandez v. City of Rochester,
   260 F. Supp. 2d 599 (W.D.N.Y. 2003) .................................................................14

Hernandez v. Keane,
   341 F.3d 137 (2d Cir. 2005)..................................................................................10

**Cases**                                                                                                          **Pages**

Hoffman v. Nassau County Police Dep't,
   2008 U.S. Dist. LEXIS 35377 (E.D.N.Y. Apr. 30, 2008) ................................................11, 15

Holcomb v. Lykens,
   337 F.3d 217 (2d Cir. 2003)...........................................................................................17

Hygh v. Jacobs,
   961 F.2d 359 (2d Cir. 1992)...........................................................................................13

Ingrassia v. County of Sullivan,
   262 F. Supp. 2d 116 (S.D.N.Y. 2003)..............................................................................8

Jemmott v. Coughlin,
   85 F.3d 61 (2d Cir. 1996)...............................................................................................18

Johnson  v. Newburn Enlarged Sch. Dist.,
   239 F.3d 246 (2d Cir. 2001)...........................................................................................16

Kinzer v. Jackson,
   316 F.3d 139 (2d Cir. 2003)......................................................................................12, 18

Komlosi v. Fudenberg,
   2000 U.S. Dist. LEXIS 4237 (S.D.N.Y. Mar. 21, 2000) .................................................13

L.B. v. Town of Chester,
   232 F. Supp. 2d 227 (S.D.N.Y. 2002)............................................................................14

Lee v. City of New York,
   2002 U.S. Dist. LEXIS 13696 (E.D.N.Y. July 22, 2002) ..................................................9

Lee v. Sandberg,
   136 F.3d 94 (2d Cir. 1997).............................................................................................17

Lennon v. Miller,
   66 F.3d 416 (2d Cir. 1995).............................................................................................17

Lewis v. United States,
   388 F. Supp. 2d 190 (S.D.N.Y. 2005)............................................................................10

Local 342, Long Island Pub. Serv. Employees v. Town Board,
   31 F.3d 1191 (2d Cir. 1994)...........................................................................................16

Loria v. Gorman,
   306 F.3d 1271 (2d Cir. 2002)...........................................................................................9

**Cases**                                                                      **Pages**

Malley v. Briggs,
    475 U.S. 335 (1986)...........................................................................17, 18

Manson v. Braithwaite,
    432 U.S. 98 (1977)...............................................................................16

Marshall v. Sullivan,
    105 F.3d 47 (2d Cir. 1996)..................................................................14

Martinez v. Simonetti,
    202 F.3d 625 (2d Cir. 2000)................................................................17

McGaw v. City of New York,
    1993 U.S. Dist. LEXIS 5874 (S.D.N.Y. May 4, 1993).......................16

Mehta v. Surles,
    905 F.2d 595 (2d Cir. 1990)................................................................16

Murphy v. Lynn,
    118 F.3d 938 (2d Cir. 1997),
    cert. denied, 522 U.S. 1115 (1998) ....................................................12

Oparaji v. City of New York,
    1997 U.S. Dist. LEXIS 23686 (E.D.N.Y. Mar. 25, 1997),
    aff'd, 153 F.3d 920 (1998) ..................................................................14

Padavan v. United States,
    82 F.3d 23 (2d Cir. 1996)......................................................................8

Ricciuti v. New York City Transit Auth.,
    70 F. Supp. 2d 300 (S.D.N.Y. 1999)...................................................12

Rohman v. New York City Trans. Auth.,
    215 F.3d 208 (2d Cir. 2000)................................................................13

Rothstein v. Carriere,
    373 F.3d 275 (2d Cir. 2004)...........................................................12, 14

Saucier v. Katz,
    533 U.S. 194 (2001)........................................................................17, 18

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003).........................................................9, 12, 18

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995)..............................................................13, 15

**Cases**                                                                                    **Pages**

State of Connecticut v. Crotty,
    346 F.3d 84 (2d Cir. 2003)...................................................................................8

Tavarez v. Reno,
    54 F.3d 109 (2d Cir. 1995).................................................................................2

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1999)..............................................................................13

United States v. Otalvaro-Ortiz, et. Al.
    04 CR 345 (S.D.N.Y. 2004)...............................................................................11

Wallace v. Kato,
    127 S. Ct. 1091 (2007).......................................................................................11

Washington v. Summerville,
    127 F.3d 552 (7th Cir. 1997)............................................................................13

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996).........................................................................9, 14

White v. Frank,
    855 F.2d 956 (2d Cir. 1988).............................................................................13

Williams v. City of New York,
    2003 U.S. Dist. LEXIS 19078 (S.D.N.Y. Oct. 23, 2003) .............................13, 14

Zoll v. Allen,
    93 F. Supp. 95 (D.C.N.Y. 1950) .......................................................................13

**Statutes**

42 U.S.C. § 1983.......................................................................................2, 10, 16

Fed. R. Civ. P. 12(b)(1)....................................................................................1, 8

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 8

Fed. R. Civ. P. 56……………………………………………………………………………………2, 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DIEGO ALCANTARA,

         Plaintiff,

    -against-


OFFICE OF THE SPECIAL NARCOTICS      07 CV 6480 (JGK)
PROSECUTOR FOR THE CITY OF NEW YORK
UC 133, Individually and as an undercover officer
for the Office of the Special Narcotics Prosecutor for
the City of New York, UNITED STATES
DEPARTMENT OF JUSTICE DRUG
ENFORCEMENT ADMINISTRATION SPECIAL
AGENT MARK CRANE, UNITED STATES
DEPARTMENT OF JUSTICE DRUG
ENFORCEMENT ADMINISTRATION SPECIAL
AGENT JOHN OLDANO, UNITED STATES
DEPARTMENT OF JUSTICE DRUG
ENFORCEMENT ADMINISTRATION SPECIAL
AGENT MICHAEL DELLAMARA, and UNITED
STATES DEPARTMENT OF JUSTICE DRUG
ENFORCEMENT ADMINISTRATION Group
Supervisor NICHOLAS CARUSO, all individual
USDOJ DEA Defendants are being sued in their
individual capacities,

         Defendants.


-----------------------------------------------------------------------x

**DEFENDANT OFFICE OF THE SPECIAL
NARCOTICS PROSECUTOR FOR THE CITY
OF NEW YORK UC # 133'S MEMORANDUM
OF LAW IN SUPPORT OF HIS MOTION TO
DISMISS OR, ALTERNATIVELY, FOR
SUMMARY JUDGMENT**

   Defendant Office of the Special Narcotics Prosecutor for the City of New York

UC # 133 submits this memorandum of law in support of his motion to dismiss this action

against him in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure or, alternatively, for summary judgment pursuant to Rule 56 on the grounds that there is no viable claim against him as a matter of law.

Plaintiff Diego Alcantara brings this action pursuant to 42 U.S.C § 1983 as against UC # 133. He also asserts claims pursuant to the decision in <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against four United States Drug Enforcement Administrations Agents ("Federal Defendants" or "DEA Agents"), arising out of his indictment on charges of conspiracy to commit money laundering and money laundering and subsequent arrest on or about May 3, 2004.[1] Plaintiff alleges claims for false arrest and malicious prosecution as against defendant UC # 133. Plaintiff's allegations, together with the documents referenced in his Second Amended Complaint ("Complaint"),[2] do not state a claim for relief based on a violation by defendant UC # 133 of a federally-protected right, and no reasonable jury could find in his favor. Accordingly, this case should be dismissed as against this defendant as a matter of law.

As set forth below, defendant UC # 133 is entitled to judgment in his favor on each of plaintiff's claims. Plaintiff does not allege, and cannot establish, that this defendant had any role in the probable cause determination that led to his arrest or prosecution, that this defendant initiated a prosecution against him or acted with malice, or that he received a favorable

---

[1] Pursuant to the briefing schedule set by the Court, the Federal Defendants submitted their papers in support of their motion to dismiss or, alternatively, for summary judgment on August 8, 2008. As noted by the Federal Defendants, the law applicable to § 1983 and <u>Bivens</u> claims has developed so that the governing standards and principles are substantially the same. <u>See, e.g.</u>, <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995). Accordingly, defendant UC # 133 incorporates by reference the arguments set forth and authorities relied upon by the Federal Defendants in their entirety.

[2] Plaintiff filed his initial complaint on July 17, 2007, and subsequently amended on November 13, 2007. The Court granted leave to amend one final time on June 4, 2008, which resulted in the filing of the Second Amended Complaint on June 23, 2008.

termination in the underlying criminal case.  Even assuming that he were able to do so, defendant would be entitled to qualified immunity from suit.  Plaintiff's claim for false arrest is, in any event, precluded because plaintiff was arrested after a warrant had issued pursuant to legal process.  The false arrest claim is also barred for failure to file within the three-year statute of limitations applicable to claims brought pursuant to § 1983.  Nor can plaintiff show a violation of a right to due process or equal protection.

## STATEMENT OF FACTS

### A.    Plaintiff's Allegations

In this action filed on July 17, 2007, plaintiff alleges claims for violations of his civil rights as a result of his arrest on or about May 3, 2004, and related criminal prosecution. See generally Complaint.  Plaintiff alleges that, on May 3, 2004, he was arrested at his home in Queens, New York, at approximately 6:00 a.m., by DEA agents acting pursuant to an arrest warrant.  Complaint at ¶ 11.  He alleges that the arrest warrant, issued pursuant to an indictment, was based on information provided by UC # 133 and the defendant DEA agents, who were jointly involved in a long-term money laundering investigation.  Complaint at ¶¶ 2, 11.

Plaintiff alleges that he was transported to a federal office in Manhattan, where he was interrogated by persons who were not proficient in his primary language, Spanish, about criminal activity of which he had no knowledge, and that he repeatedly denied any involvement in such activity.  Complaint at ¶¶ 13-21.[3]  After about an hour, he was transported to the United States Courthouse for the Southern District of New York, where he met with an assigned defense

_____

[3] Plaintiff also alleges that, at the time of his arrest, federal agents searched his home and found no evidence of criminal activity.  Complaint at 12.

attorney and was arraigned on charges of conspiring to engage in money laundering and money laundering of narcotics proceeds in violation of federal law. Complaint at ¶¶ 23-24, 56.

According to plaintiff, the overt act that was the basis of the charges against him was that he had transferred currency to a undercover officer on October 17, 2001. Complaint at ¶ 25. He alleges that the transaction of that date in which a courier transferred money to the undercover was recorded with surveillance cameras and video equipment with zoom capabilities by the field team that consisted of DEA agents, and was audio recorded. Complaint at ¶¶ 27-28. The individually-named defendants and others prepared written reports and court-related documents, Complaint at ¶¶ 29-30, none of which ever included any reference to any identification procedure with respect to the plaintiff. Complaint at ¶ 31.

Plaintiff's complaint makes few allegations that relate specifically to defendant UC # 133. He alleges that this defendant, while working as an undercover, authored a report reflecting that he had received a phone call from a subject, who was later identified as Diego Alcantara. Complaint at ¶ 36. According to plaintiff, UC # 133's report referenced another report prepared by defendant DEA agent Mark Crane reflecting that the license plate number of the car used by the subject had been traced to a Diego Alcantara. Complaint at ¶ 36. Plaintiff further alleges that neither the report prepared by Crane nor the report prepared by UC # 133 reflected that an identification procedure of Diego Alcantara was undertaken by anyone who had participated in or observed the transaction. Complaint at ¶ 37.[4]

Plaintiff alleges that UC # 133 had failed to perform a proper identification of the courier who had transferred the money to him on October 17, 2001, and that, had he done so, he

---

[4] Plaintiff generally alleges that UC # 133 prepared written reports and documents. Complaint at ¶¶ 29-30, 32. However, he specifically identifies only the one report that incorporates by reference the document prepared by Crane and the information set forth therein.

would have known that the courier was not plaintiff Diego Alcantara.  Complaint at ¶ 39.
Plaintiff also alleges that documentation prepared by DEA agents subsequent to the transaction
dated November 4, 2001, and May 7, 2003, reflected that the courier had been "tentatively
identified."  Complaint at ¶¶ 40-39.[5]  He concedes, however, that the courier was driving a
vehicle that had been registered to plaintiff.  Complaint at ¶¶ 35-36, 45.

Plaintiff alleges that the prosecutor obtained information either from UC # 133 or
the DEA field team, and that the prosecution was commenced based on information provided by
each of the non-supervising defendants.  Complaint at ¶¶ 47, 50.  However, plaintiff alleges no
specific facts to support that UC # 133 supplied information to the prosecutor that led to
plaintiff's arrest and prosecution.  Moreover, plaintiff has not alleged that any representation was
made by UC # 133 or any of the defendant DEA agents that an identification of plaintiff had
been confirmed.

Plaintiff alleges that, beginning on May 3, 2004, he was in custody for 72 days
after his arraignment until July 14, 2007, when a federal judge ordered the amount of his bail
reduced and he was released.  Complaint at ¶¶ 2, 56, 83.  On May 18, 2004, he hired private
counsel who had various communications with the United States Attorney's office concerning
his prosecution over a period of time.  Complaint at ¶¶ 59, 61-62, 64-73, 80, 85.  On or about
January 8, 2005, his counsel was informed by the U.S. Attorney's office that the prosecution had
decided to request an order of <u>nolle prosequi</u>.  Complaint at ¶ 85.

Plaintiff now alleges claims pursuant to § 1983 against defendant UC # 133 for
malicious prosecution and false arrest (First and Second Claims for Relief), as a result of his

---

[5] The paragraphs in plaintiff's complaint are not numbered in sequence.  This reference is to the
second paragraph 39 on page 11.

October 17, 2001 arrest and related criminal prosecution. <u>See</u> Complaint at ¶¶ 98-108.[6] Plaintiff does not allege that UC # 133 testified before the grand jury or took part in his arrest. As to defendant UC # 133, the sole factual allegations concerning his involvement is the conclusory allegation that this defendant provided information that implicated plaintiff in the transaction that took place on October 17, 2001. <u>See</u> Complaint at ¶ 11.

**B.      The "Operation White Dollar" Investigation**

UC # 133 was an undercover law enforcement officer is the Office of the Special Narcotics Prosecutor for the City of New York at the time of the events alleged herein. Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Rule 56.1 Statement at ¶ __"), at ¶ 27.[7] In October of 2001, he assisted federal DEA agents in connection with an investigation known as "Operation White Dollar." Rule 56.1 Statement at ¶ 28. That investigation was conducted by members of the United States Department of Justice Drug Enforcement Administration ("DEA"). Rule 56.1 Statement at ¶ 19. Operation White Dollar was comprised of a series of approximately 30 investigations that the Attorney General authorized in September 2001, to permit the DEA to launder drug proceeds as part of a federal narcotics law enforcement effort. Rule 56.1 Statement at ¶ 20.

As part of this investigation, transactions were arranged between undercover officers and drug money couriers. Rule 56.1 Statement at ¶ 21. The money was deposited in undercover bank accounts controlled by the DEA, and was then wired to other bank accounts

---

[6] It is unclear whether plaintiff also intends to pursue claims for violation of his rights to due process and equal protection, as he does not set forth discrete claims for relief but makes reference to those rights in his cause of action for malicious prosecution. <u>See</u> Complaint at ¶ 100; <u>see also</u> Complaint at ¶ 2. However, these claims are not viable for the reasons discussed below.

[7] Defendant refers the Court to this document for a more complete statement of the facts.

controlled by suspects.  Rule 56.1 Statement at ¶ 23.  The purpose was to locate, arrest, and prosecute participants in large narcotics money laundering conspiracies.  Rule 56.1 Statement at ¶ 22.  UC # 133's role in the investigations was limited to transactions in which he arranged one or more meetings with a member or members of a drug money laundering conspiracy, attended the meeting or meetings, took the money from the courier, and then immediately transferred the money to one or more DEA agents.  Rule 56.1 Statement at ¶ 29.  During the meetings, DEA surveillance agents closely monitored UC # 133's activities.  Rule 56.1 Statement at ¶ 30.

UC # 133's role was limited to prevent his identity from becoming known, therefore compromising his safety and the safety of others involved in the investigations.  Rule 56.1 Statement at ¶ 31.  As a result, the identification of drug money laundering couriers with whom he has come face-to-face has been the responsibility of DEA team members.  Rule 56.1 Statement at ¶ 32.  The identification of suspects was not the responsibility of UC # 133, nor was it his role in the investigation.  Rule 56.1 Statement at ¶ 33.  Nor has it been UC # 133's role to participate in arrests or in the decision to arrest or prosecute anyone related to Operation White Dollar, seek an indictment, testify before a grand jury, or provide information to be presented to a grand jury.  Rule 56.1 Statement at ¶ 34.  As a result, UC # 133 was not aware of plaintiff's arrest or prosecution until this lawsuit was filed in 2007.  Rule 56.1 Statement at ¶ 35.

**C.    Plaintiff's Criminal Prosecution Was Concluded by Order of <u>Nolle Prosequi</u>**

An order of <u>nolle prosequi</u> dismissing the indictment as against plaintiff was entered on January 10, 2005.  Complaint at ¶ 2; Rule 56.1 Statement at ¶ 17.  That order stated that "it [had] been concluded that further prosecution of Diego Alcantara would not be in the interests of justice."  Rule 56.1 Statement at ¶ 18.

## ARGUMENT

To survive a motion to dismiss pursuant to Rule 12(b)(6), a pleading must be supported by allegations that are not merely conclusory, but put forth underlying facts so as to make a claim plausible on its face. Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1974 (2007). A motion to dismiss for failure to state a claim should be granted where, as here, it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. See Padavan v. United States, 82 F.3d 23, 26 (2d Cir. 1996); Ingrassia v. County of Sullivan, 262 F. Supp. 2d 116, 118 (S.D.N.Y. 2003). In assessing the legal sufficiency of a claim, a court may consider facts alleged in the complaint, documents attached thereto or incorporated by reference, and documents that are "integral" to plaintiff's claims even if not expressly incorporated by reference. E.g., Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 46-48 (2d Cir. 1991). The court also can consider documents in plaintiff's possession or that plaintiff knew of or relied upon in bringing suit. Cortec Indus., 949 F.2d at 46-48. As the allegations of the complaint do not support a claim for a violation of a federal right, this Court also lacks subject matter jurisdiction pursuant to Federal Rule 12(b)(1).

Alternatively, summary judgment is appropriate pursuant to Rule 56(c) when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and defendants are thus entitled to judgment dismissing plaintiff's claims as a matter of law. See, e.g., Eastman Kodak v. Image Tech. Servs., 504 U.S. 451, 457 (1992). As no reasonable jury could find in plaintiff's favor, his claims should be dismissed pursuant to Rule 56(c). See State of Connecticut v. Crotty, 346 F.3d 84, 102 (2d Cir. 2003).

## POINT I

### PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED BECAUSE HE WAS ARRESTED AFTER AN INDICTMENT WARRANT HAD ISSUED

To state a claim for false arrest, a plaintiff must show that "'(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."' Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); Broughton v. State, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 93 (1975). The existence of probable cause is a complete defense to this claim. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

There is probable cause so long as the officer acted reasonably and in good faith in relying on the information available to him. Lee v. City of New York, 2002 U.S. Dist. LEXIS 13696 at *19 (E.D.N.Y. July 22, 2002) (citing Bernard, 25 F.3d at 102).[8] Once probable cause has been established, a police officer is under no duty to "'explore and eliminate every plausible claim of innocence before making an arrest.'" Coons v. Casabella, 284 F.3d 437, 441 (2d Cir. 2002) (quoting Cerrone v. Brown, 246 F.3d 194, 198 (2d Cir. 2001)). Before making an arrest, if an arresting officer has probable cause, he or she "need not also believe with certainty that the arrestee will be successfully prosecuted." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). Probable cause is "an assessment of probabilities, not an ascertainment of truths." Loria v. Gorman, 306 F.3d 1271, 1288-89 (2d Cir. 2002).

---

[8] For the Court's convenience, copies of Lexis and other unreported decisions cited in this memorandum are arranged in alphabetical order and annexed hereto as Exhibit A.

Plaintiff cannot show an absence of probable cause from the standpoint of UC # 133, as he is required to do. See Campbell v. Guiliani, 2000 U.S. Dist. LEXIS 1617 at *7 n.3 (E.D.N.Y. Feb. 16, 2000) (recognizing that plaintiff has burden of proof on probable cause element in § 1983 action for false arrest). Based on the facts available to him, the document created by UC # 133 was an accurate statement of the limited information that was known to him at the time, and plaintiff has not alleged otherwise. Also, as noted above, UC # 133 did not participate in plaintiff's arrest. Accordingly, he had no personal involvement with respect to plaintiff's confinement or the determination as to whether there was probable cause. To sustain a claim against UC # 133, plaintiff must plead and prove personal involvement by this defendant in the underlying events. See, e.g., Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2005); Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995). Plaintiff cannot do so, and his claim for false arrest is therefore flawed for this additional reason.

Plaintiff was arrested pursuant to valid legal process. The existence of a grand jury indictment and arrest warrant presumptively establish probable cause for plaintiff's arrest. See, e.g., Golino v. City of New York, 950 F.2d 864, 870 (2d Cir. 1991) (plaintiff must satisfy heavy burden of knowing, intentional, or reckless false and material statement or similar conduct by defendant to overcome presumption of objective reasonableness and probable cause); Lewis v. United States, 388 F. Supp. 2d 190, 197-98 (S.D.N.Y. 2005) (qualified immunity). He was arrested based on a federal arrest warrant signed by United States Magistrate Judge Debra Freeman. Rule 56.1 Statement at ¶¶ 3, 6. The warrant issued after he had been indicted by a grand jury. Rule 56.1 Statement at ¶¶ 2-4. Where, as here, plaintiff's arrest was effected pursuant to a valid warrant predicated on a grand jury indictment, plaintiff's false arrest claim also is barred for the reason that legal process has attached and he is required to proceed, if at all, on a theory of malicious prosecution. See Coakley v. Jaffe, 72 F. Supp. 2d 362, 364 (S.D.N.Y.

1999), aff'd w/o pub. op., 234 F.3d 1261 (2d Cir. 2000) (granting summary judgment on plaintiffs' false arrest claims).

Moreover, plaintiff's false arrest claim is, in any event, barred by the three-year statute of limitations applicable to § 1983 claims. See Hoffman v. Nassau County Police Dep't, 2008 U.S. Dist. LEXIS 35377 at *18 (E.D.N.Y. Apr. 30, 2008). The claim begins to accrue at the time of arraignment. Hoffman, 2008 U.S. Dist. LEXIS 35377 at *21 (citing Wallace v. Kato, 127 S. Ct. 1091, 1095-96 (2007). Plaintiff alleges that he was arrested on May 3, 2004, and that he was arraigned on the same date. Complaint at ¶¶ 11, 24. He did not file this action until July 17, 2007, Rule 56.1 Statement at ¶ 1, more than three years after the limitations period ended on May 3, 2007.[9] For this and each of the other independent reasons set forth above, there was no false arrest and this claim should fail as a matter of law.

## POINT II

### PLAINTIFF'S MALICIOUS PROSECUTION CLAIM AGAINST UC # 133 SHOULD BE DISMISSED BECAUSE HE CANNOT SATISFY ANY OF THE ELEMENTS OF THIS CLAIM

Plaintiff's prosecution was premised on the prosecutor's decision to go forward based on evidence supplied by as-of-yet unidentified federal DEA agents. Plaintiff has not alleged facts to support a claim that UC # 133 acted with malice or importuned the prosecutors to act. Nor can he show an absence of probable cause or a favorable termination. Accordingly, it is clear at this stage that plaintiff cannot satisfy any of the elements of a claim for malicious

---

[9] Notwithstanding plaintiff's allegation, there is evidence that plaintiff was arraigned on May 11, 2004. See Federal Defendants' memorandum of law and 14, and citation to the record in United States v. Otalvaro-Ortiz, et al., 04 CR 345 (S.D.N.Y. 2004), therein. However, any discrepancy concerning the arraignment date as between May 4 and May 11, 2004, would not affect the outcome of this analysis.

prosecution. Additionally, as noted above, plaintiff has not alleged, and cannot show, personal involvement by this defendant in any of the operative events, including the decision to seek an indictment, obtain a warrant, or prosecute plaintiff for the federal crimes of which he was accused.

To prove a claim for malicious prosecution, plaintiff must show that the defendant (1) initiated or continued a criminal proceeding, (2) a termination of the proceeding in plaintiff's favor, (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motive for defendant's actions. See, e.g., Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003); Savino, 331 F.3d at 72. Plaintiff must prove each such element to succeed on a claim for malicious prosecution. See Ricciuti v. New York City Transit Auth., 70 F. Supp. 2d 300, 321 (S.D.N.Y. 1999). However, plaintiff cannot establish any of the elements here.

As to the element of a favorable termination, a nolle prosequi order is not automatically such a termination for the purposes of a malicious prosecution claim. Moreover, in this case, the order was based on the prosecutor's request for a dismissal "in the interests of justice." Rule 56.1 Statement at ¶ 18. To prove a favorable termination, plaintiff must show that the dismissal was indicative of innocence, Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998), or at least was not inconsistent with innocence. See Rothstein v. Carriere, 373 F.3d 275, 286 (2d Cir. 2004).[10] A dismissal in the interests of justice is not a favorable termination under the applicable case law. See, e.g., Hygh v. Jacobs, 961 F.2d 359, 367-68 (2d Cir. 1992); see also Murphy, 118 F.3d at 948-49 (discussing types of

---

[10] The Federal Defendants explain the evolution of this standard and that decisions by district courts subsequent to Rothstein have continued to apply the former standard such that a plaintiff must demonstrate that the termination of his criminal case was indicative of his innocence. Federal Defendants' memorandum of law at 9 n.6.

dispositions and cases); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Indeed, the courts consistently have held that such a termination fails to establish this element of a malicious prosecution claim, because this disposition "leaves open" the question of the guilt or innocence of the accused. See, e.g., Hygh, 961 F.2d at 368.   As noted by the Federal Defendants, federal decisions by courts outside of the Second Circuit have considered a nolle prosequi order to fall short of satisfying the favorable termination element on the rationale that it neither precludes a future finding of guilt, see Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997), nor bars a subsequent reindictment.   See Zoll v. Allen, 93 F. Supp. 95, 97 (D.C.N.Y. 1950).   For additional discussion of this disposition, we refer the Court to the authorities discussed by the Federal Defendants.   See Federal Defendants' memorandum of law at 10-11 & n.7.  In light of the facts known and alleged by plaintiff, he cannot meet this element and his malicious prosecution claim should be dismissed for this reason alone.

 To hold UC # 133 liable on this theory, plaintiff also must allege facts to show that he played an active role in the prosecution, such as by encouraging or importuning authorities to act.  See Rohman v. New York City Trans. Auth., 215 F.3d 208, 217 (2d Cir. 2000).  Mere reporting of a crime to the district attorney and giving testimony are insufficient to satisfy the "initiation" element of a malicious prosecution claim.  Rohman, 215 F.3d at 217 (citations omitted).  A prosecutor's independent judgment to proceed is an intervening cause that absolves the officer. White v. Frank, 855 F.2d 956, 962 (2d Cir. 1988); Komlosi v. Fudenberg, 2000 U.S. Dist. LEXIS 4237 at *33-34 (S.D.N.Y. Mar. 21, 2000).   A claim for malicious prosecution is within the judicial phase of a prosecution, which the district attorney shapes. See Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999); Carson v. Lewis, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999).  The chain of causation is broken once the prosecutor brings charges. See Williams v. City of New York, 2003 U.S. Dist. LEXIS 19078 at *19 (S.D.N.Y. Oct. 23,

13

2003). Thus, to sustain a claim against UC # 133, plaintiff must show that he deliberately misled the prosecutor. See Williams, 2003 U.S. Dist. LEXIS 19078 at *18-19. Here, UC # 133's limited role in the events ended when he prepared his report of the undercover transaction in October of 2001. There is no allegation even to suggest that he had contact with a prosecutor, let alone importuned the prosecutor to act.

The existence of probable cause is a complete defense to an action for malicious prosecution. Weyant, 101 F.3d at 852. Plaintiff was indicted by a grand jury, which creates a rebuttable presumption of probable cause. See, e.g., Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000) (citing Marshall v. Sullivan, 105 F.3d 47, 54 n.2 (2d Cir. 1996). The presumption of probable cause arising from an indictment can be overcome only by proof of fraud, perjury, or other misconduct in the grand jury. See, e.g., Rothstein, 373 F.3d at 283; see also Green, 219 F.3d at 60. Accordingly, plaintiff must show that UC # 133 testified in the grand jury, which he did not do. Rule 56.1 Statement at ¶ 34. Also, plaintiff was arrested based on a valid warrant signed by a United States Magistrate Judge, Rule 56.1 at ¶¶ 3,6, which carries a presumption of probable cause. See, e.g., Batista v. City of New York, 2007 U.S. Dist. LEXIS 71905 at * 24 (S.D.N.Y. Sept. 25, 2007); Cunny v. City of New York, 2001 U.S. Dist. LEXIS 10806 at *15 (S.D.N.Y. July 31, 2001).

Lastly, plaintiff's malicious prosecution claim should be dismissed because he has alleged no facts to support a finding of actual malice. See, e.g., L.B. v. Town of Chester, 232 F. Supp. 2d 227, 236 (S.D.N.Y. 2002); DeCristo v. City of New York, 2004 U.S. Dist. LEXIS 9557 at *3 (S.D.N.Y. May 26, 2004). There is no evidence of any personal animus toward plaintiff. See Hernandez v. City of Rochester, 260 F. Supp. 2d 599, 615 (W.D.N.Y. 2003). As plaintiff has alleged no facts to support such an inference of malice, as he must, see Oparaji v. City of

New York, 1997 U.S. Dist. LEXIS 23686 at *5-6 (E.D.N.Y. Mar. 25, 1997), aff'd, 153 F.3d 920

(1998), his claim is flawed for this additional and independent reason.

## POINT III

### PLAINTIFF CANNOT SHOW THAT UC # 133 VIOLATED HIS DUE PROCESS OR EQUAL PROTECTION RIGHTS

It appears that plaintiff may intend to advance claims for violation of his rights to

due process or equal protection, Complaint at ¶ 100, although these claims are not specifically

set forth in the complaint.  To the extent that he intends to assert such claims, they too should be

dismissed.  Plaintiff has not alleged that UC # 133 took any action with respect to his arrest or

prosecution, let alone that this defendant acted arbitrarily, denied him procedural protections, or

treated him differentially based on a suspect classification.

A claim for false arrest or malicious prosecution is evaluated under Fourth

Amendment standards, not based on Fifth or Fourteenth Amendment due process considerations.

See Singer, 63 F.3d at 115-16 (citing Albright v. Oliver, 510 U.S. 266, 274 (1994)); Hoffman,

2008 U.S. Dist. LEXIS 35377 at *22 (constitutional claim alleging deprivation of liberty

analyzed under Fourth Amendment).  Accordingly, any claim asserted by plaintiff in these

circumstances related to his confinement or prosecution as alleged in the complaint should be

framed, if at all, as a claim for a violation of a Fourth Amendment right.

Moreover, a substantive due process right entitles plaintiff to protection against

arbitrary and oppressive government action, "whether the fault lies in a denial of fundamental

procedural fairness, or in the exercise of power without any reasonable justification in the service

of a legitimate government interest."  County of Sacramento v. Lewis, 523 U.S. 833, 845-46

(1998); see also Bryant v. City of New York, 2003 U.S. Dist. LEXIS 21642 at *22-23 (S.D.N.Y.

Dec. 2, 2003).  The substantive due process guarantee of the Fourteenth Amendment protects

individuals from "conscience-shocking" exercises of power by government actors. See Johnson v. Newburn Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001). Without more, plaintiff cannot state a substantive due process claim based on the allegations that he was arrested and prosecuted for crimes that he purports that he did not commit.

In order to sustain a claim for deprivation of a procedural due process right, plaintiff must identify a right, show that he was deprived of that right, and show that the deprivation was effected without due process. Local 342, Long Island Pub. Serv. Employees v. Town Board, 31 F.3d 1191, 1194-97 (2d Cir. 1994) (citing Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (per curiam)). However, plaintiff has alleged no facts to show that he was deprived of any rights without due process. On the contrary, there was probable cause for plaintiff's arrest. An indictment was obtained, a warrant was issued, and plaintiff was arraigned before a judge. Complaint at ¶¶ 2-4, 10. These procedures afforded plaintiff his rights for the purposes of a due process claim. To the extent that he complains that the procedures used to identify him were inadequate or prejudicial, his sole remedy was in the context of a suppression hearing in the underlying criminal case. McGaw v. City of New York, 1993 U.S. Dist. LEXIS 5874 at *6 (S.D.N.Y. May 4, 1993) (recognizing that "a suggestive pre-indictment identification procedure does not in itself intrude upon a constitutionally protected interest" and cannot be the basis for § 1983 liability) (quoting Manson v. Brathwaite, 432 U.S. 98, 113 n.13 (1977)).

Although plaintiff alleges an equal protection claim, he has not alleged facts to support that an impermissible consideration such as race was the basis for his arrest, as he is required to do to sustain a Fourteenth Amendment equal protection claim. See Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000); Bryant, 2003 U.S. Dist. LEXIS 21642 at *46-47. He has alleged no facts to support that he was intentionally singled out or selectively mistreated as compared with other civilians.

16

## POINT IV

### UC # 133 IS ENTITLED TO QUALIFIED IMMUNITY AND, THEREFORE, ALL CLAIMS AGAINST HIM SHOULD BE DISMISSED ON THIS BASIS ALONE

All claims against UC # 133 should be dismissed because, at a minimum, he is entitled to qualified immunity from suit. An official is entitled to this immunity if either (1) his conduct did not violate a clearly established right of which a reasonable person would have known, or (2) it was "objectively reasonable" to believe that his actions did not violate a clearly established right. See, e.g., Anderson v. Creighton, 483 U.S. 635, 637-41 (1987); Holcomb v. Lykens, 337 F.3d 217, 220 (2d Cir. 2003). Even where a right is well established, this defense applies where reasonably competent officials could disagree as to whether the conduct at issue would violate an established right, Malley v. Briggs, 475 U.S. 335, 345 (1986), or if it was objectively reasonable for the officer to believe that his acts did not violate a right. See Lee v. Sandberg, 136 F.3d 94, 102, 104 (2d Cir. 1997); see also Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (police may be shielded from liability when they are required to make on-the-spot judgments in tense circumstances); cf. Malley, 475 U.S. at 345-46 (officers not personally liable even if they mistakenly conclude that their actions are lawful). An officer acts in an objectively reasonable manner unless "no officer of reasonable competence could have made the same choice in similar consequences." Lee, 136 F.3d at 102. In such a case, there is "arguable probable cause" and officers are protected by qualified immunity. See, e.g., Saucier v. Katz, 533 U.S. 194, 201 (2001); Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000).

This doctrine protects officials from the costs of defending suits. Crawford-el v. Britton, 523 U.S. 574, 600 (1998). It recognizes "the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous

17

exercise of official authority." Carson, 35 F. Supp. 2d at 264 (quoting Jemmott v. Coughlin, 85 F.3d 61, 66 (2d Cir. 1996)). The doctrine is "an entitlement not to stand trial or face other burdens of litigation." Saucier, 533 U.S. at 201. This defense should be resolved at the earliest possible stage of a litigation and before trial. Saucier, 533 U.S. at 201; see also Anderson, 483 U.S. at 646 n.6 (concluding that qualified immunity issues should be resolved preferably in a dispositive motion); Malley, 475 U.S. at 341 (qualified immunity should be summarily adjudged if the officer was not on notice that his conduct would be clearly unlawful). Qualified immunity is independent of the merits of the underlying claims. Saucier, 533 U.S. at 204. A denial of summary judgment based on this defense is subject to immediate appellate review. Escalera v. Lunn, 361 F.3d 737,742-43 (2d Cir. 2004); Kinzer, 316 F.3d at 143.

On this record, there can be no doubt that UC # 133 acted in an objectively reasonable manner and is entitled to qualified immunity. It was objectively reasonable for him to complete a report of his undercover activity and cross-reference another report prepared by a DEA surveillance agent. At a minimum, any officer of a reasonable degree of competence would have believed that he was entitled to do so. His reference to the DEA agent's report was explicit, and he therefore cannot be accused of having misled the prosecutor or anyone else who may be said to have acted in reliance. He played no role in any determination as to whether there was probable cause for plaintiff's prosecution or arrest. Certainly, his conduct cannot be regarded as having violated any clearly established right. See, e.g., Saucier, 533 U.S. at 202. To the extent that he relied in his report on information provided by another law enforcement officer, he also is entitled to qualified immunity based on the "fellow officer" rule. See, e.g., Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003). Qualified immunity is available as to a claim for malicious prosecution, where there otherwise was at least arguable probable cause for an arrest. Savino, 331 F.3d at 78. UC # 133's conduct cannot be regarded as

18

objectively unreasonable; nor can he be said to have violated a clearly established right. There can thus be no doubt that he is entitled to qualified immunity and should not be required to litigate plaintiff's claims to trial.

## **CONCLUSION**

As set forth above, plaintiff cannot show a violation of a federally-protected right by this defendant. For these reasons, defendant UC # 133's motion to dismiss or, alternatively, for summary judgment should be granted and this action should be dismissed as against him with prejudice in all respects.

Dated:     New York, New York
          August 29, 2008

                  MICHAEL A. CARDOZO
                  Corporation Counsel of the City of New York
                  Attorney for Defendant Office of the Special
                  Narcotics Prosecutor for the City of New York
                  UC # 133
                  100 Church Street
                  New York, NY  10007
                  (212) 227-4071

                  By:    _____/S/_____
                       SUSAN P. SCHARFSTEIN (SS 2476)